RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2006 JUN 26 PM 3: 43

NANCY M.
MAYER-WHITTINGTON
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Criminal No: 06-075 RBW |
| | * | |
| v. | * | Filed: March 20, 2006 |
| | * | |
| CMET, INC. | * | |
| | * | Violation: 18 U.S.C. § 371 |
| | * | |
| | * | |
| | ******* | |

FILED
JUN 2 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## JOINT SENTENCING MEMORANDUM

The United States of America and the Defendant, CMET, Inc. ("CMET"), file this Joint Sentencing Memorandum in support of a joint recommendation that the Court accept the plea agreement the parties have filed pursuant to Fed.R.Crim.P. 11(c)(1)(C) and sentence the Defendant to pay a fine of $100,000 as provided therein. The parties also request that sentence be imposed concurrent with the acceptance of the plea agreement based on this Joint Sentencing Memorandum and the statements of the parties at the hearing on the plea agreement, without need of an evidentiary sentencing hearing or a post-acceptance report by the Probation Office.

### INTRODUCTION

On March 20, 2006, the United States filed an Information charging CMET with one count of participating in a conspiracy, in violation of Title 18 U.S.C. § 371, to corruptly influence, obstruct, or impede the IRP merger consent decree process, a violation of Title 18 U.S.C. § 1503. The Information charges that the conspiracy began at least as early as June 2001 and continued at least through May 2002. CMET is scheduled to be arraigned on June 30, 2006. CMET will waive indictment and plead guilty pursuant to a plea agreement entered into under

RECEIVED
JUN 2 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Fed. R. Crim. P. 11(c)(1)(C). A copy of the plea agreement, attached as Exhibit A, was filed with this Court on March 20, 2006.

This memorandum outlines the material terms of the plea agreement between the United States and CMET and provides assistance to the Court in sentencing CMET on an expedited basis, in the event the Court grants the parties' request to impose a sentence immediately upon acceptance of the plea agreement and CMET's guilty plea.

The United States and CMET respectfully submit that this memorandum, the plea agreement between the parties and the statements of the parties at the hearing on the plea agreement, along with the presentence report of the Probation Office, will provide sufficient information for the Court to impose a sentence. In addition, an expedited sentencing would accommodate CMET's corporate representative, who will be traveling from Japan on June 30, 2006 for the arraignment. If the Court finds it does not have sufficient information to allow for the imposition of sentence on the scheduled date of the plea hearing, the parties are prepared to submit additional information requested by the Court.

## MATERIAL TERMS OF CMET PLEA AGREEMENT

The material terms of the CMET plea agreement provide:

1. CMET will waive indictment, waive all rights as enumerated in the agreement, and plead guilty under Fed. R. Crim. P. 11(c)(1)(C) to a one-count Information charging it with participating in a conspiracy, in violation of Title 18 U.S.C. § 371, to corruptly influence, obstruct, or impede the IRP merger consent decree process, a violation of Title 18

U.S.C. § 1503.[1] The conspiracy is alleged as beginning as early as June 2001 and continuing through at least May 2002. It was the object of the conspiracy that the Defendant endeavored to corruptly influence, obstruct, or impede the IRP merger consent decree process, and the due administration of justice, the effect of which would have been to reduce and thwart the attainment of effective relief called for under a Final Judgment filed in this District on or about August 16, 2001.

2. From about June 2001 through May 2002, CMET, a corporation organized and existing under the laws of Japan, was a manufacturer of IRP and related materials used in IRP systems and was engaged in the sale of IRP systems in Asia.[2] The Defendant had its headquarters and principal place of business in Kanagawa Prefecture, Japan.

3. On or about June 6, 2001 the United States filed a complaint, pursuant to Section 15 of the Clayton Act, as amended 15 U.S.C. § 25, in the United States District Court for the District of Columbia, in order to enjoin an acquisition that would reduce competition in the United States IRP market and tend to create a monopoly. The complaint alleged that "[t]he acquisition would reduce the number of competitors in the U.S. industrial RP systems market

---

[1] For purposes of the plea agreement "IRP" refers to industrial rapid prototyping. Rapid prototyping (also known as solid imaging), is a field embodying use of computers and computer automated equipment to rapidly produce three-dimensional prototypes, models, and even low-volume production quantities of physical objects that traditionally have been produced by machining and other methods. In rapid prototyping a machine transforms a computer design for a mechanical or other part into a three-dimensional prototype or model. Rapid prototyping is significantly faster and less expensive than traditional methods of creating a prototype, such as machining, milling or grinding.

[2] CMET is a subsidiary of a Japanese company formerly known as Teijin Seiki, Co., Ltd. ("TS"). TS was acquired by a Japanese holding company, Nabtesco Corporation, in 2003 and CMET is currently a separately incorporated business unit of Nabtesco.

3

from three to two and would result in the combined company having a U.S. market share, by revenue, of 80% of the industrial RP systems market." CMET was not a competitor in the U.S. IRP market, nor a party to that transaction. After the suit was filed the United States and the civil defendants reached an agreement to settle the case, which required the civil defendants to license their IRP technology to a foreign competitor who would enter the United States IRP market to preserve and replace competition lost by the merger. The United States filed the proposed Final Judgment relating to this settlement agreement August 16, 2001. The Defendant was one of the companies that was presented to the United States by the merging parties as a potential acquirer of the technology license.[3]

4.  Entering Final Judgments based on settlement agreements in merger cases is an integral part of the Department of Justice's ("DOJ") mission to enforce the antitrust laws and maintain competitive markets. The essence of the Final Judgment alleged to have been the object of the conspiracy to obstruct in this case was to effect the prompt and certain divestiture of assets which would assure that competition would not be substantially lessened in the United States IRP market as a result of the challenged merger. A key element of DOJ's inquiry under the Final Judgment was whether the company chosen to acquire the assets had the intent and capability to compete vigorously in the United States IRP market. By misrepresenting its intent to compete vigorously in the United States and acting to conceal its relationship with its corporate co-conspirator, one of the civil defendants, CMET conspired to act against the public interest and in violation of the Final Judgment.

---

[3] References in the following paragraphs 4 through 7 are to actions taken by CMET or by its former parent, TS, with involvement of CMET.

4

5. Specifically, during the relevant period, while it was being considered for the technology license, CMET sought to conceal the full nature of its business relationship with its co-conspirators and its principal motivation for bidding on the technology license. Shortly after the proposed final judgment was filed, CMET was counseled, by its corporate co-conspirator to never mention to DOJ merger staff that it had engaged in discussions about business collaborations with the corporate co-conspirator and to exaggerate its interest in the U.S. RP market. CMET followed this advice.

6. In addition, CMET never informed DOJ that its bid for the technology license was based on covert understandings between it and its corporate co-conspirator concerning future business dealings, except to the extent that such information could be inferred from documents produced to DOJ in connection with its request for the voluntary submission of documents. After meeting with executives of its corporate co-conspirator, CMET raised its bid price for the technology license from $600,000 to over $1 million. CMET agreed to this increase in exchange for its corporate co-conspirator agreeing that it would resolve an ongoing patent dispute between the two companies and would enter into distribution and materials supply arrangements with CMET in Asia.

7. Further, during the DOJ merger review process, CMET produced materially altered translations of Japanese documents, which were misleading and had the effect of concealing the true nature of its business relationship with its corporate co-conspirator and its lack of intent to compete effectively in the United States IRP market, an issue that was pivotal to the inquiry DOJ was making under the terms of the Final Judgment. Finally, representatives of CMET, in a series of meetings with DOJ in April and May 2002, misrepresented CMET's intent

to vigorously compete in the United States if granted the technology license.

8. During the relevant period the business activities of the Defendant and its co-conspirators were within the flow of, and substantially affected interstate commerce. Furthermore, the offense charged in the Information was carried out in the District of Columbia within five years of the date of the filing of the Information.

9. The United States and CMET agree that the appropriate sentence in this case is a fine of $100,000 and a special assessment of $400. The fine is to be paid in full within 15 days of the imposition of sentence. The Defendant understands that sentencing for the offense charged in the Information will be pursuant to 18 U.S.C. §§ 3553 and 3572, and that U.S.S.G. § 8C2.1, which applies to corporations, does not include 18 U.S.C. § 1503 as an offense to which it applies; however, to the extent the U.S.S.G. provides relevant guidance by analogy the Guidelines in effect on the date of the charged violation occurred will apply. CMET understands that the guidelines are advisory not mandatory. The Defendant further understands that the sentence recommended in the plea agreement will be determined by the Court by a preponderance of the evidence standard and that the Court's sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. §§ 3553 and 3572.

10. The United States will not seek restitution in this case.

11. The Defendant and its parent and its related entity, Teijin Seiki Co., Ltd. (collectively "related entities"), will cooperate fully and truthfully in the conduct of the ongoing federal investigation involving the conspiracy to corruptly influence, obstruct or impede the IRP merger consent decree process. The related entities have already made available certain executives, in the United States, for interviews by DOJ attorneys, and have voluntarily produced

documents located in Japan. Moreover, they have agreed to make additional executives available to the United States for interviews. The documents produced and interviews conducted, as well as additional proffered cooperation, have substantially assisted and will continue to assist the DOJ in furthering its investigation.

12. The United States agrees that it will not bring further criminal charges against CMET or any of its related entities for their participation in the conspiracy to corruptly influence, obstruct or impede the IRP merger consent decree process or any other federal investigation resulting therefrom. The United States further agrees that it will not bring criminal charges against any current or former director, officer, or employee of the Defendant or its related entities for any act or offense committed before the date of the Plea Agreement and while any such person was acting in furtherance of the aforementioned conspiracy or performing any acts or offenses in connection with this conspiracy. The United States also agrees that when it determines that a current or former director, officer, or employee of the Defendant has relevant information to this matter, the United States will request the cooperation of that person by delivering a written request to counsel for the individual or counsel for the Defendant. In addition, the United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to the Plea Agreement, or for meetings with counsel, the United States will refrain from taking any action to subject the person to arrest, detention, or service of process, or to prevent the person from entering or leaving the United States.

## UNITED STATES SENTENCING GUIDELINES CALCULATIONS

The parties agree that the Sentencing Guidelines applicable here are the 2001 Sentencing Guidelines. Ordinarily, the Sentencing Guidelines in effect on the date of sentencing should

apply, unless the Guidelines have been amended between the date of the offense and the date of sentencing in a way that is unfavorable to the Defendant. In such cases, the *Ex Post Facto Clause* precludes application of the unfavorable amendment. USSG § 1B1.11(b); *see Lynce v. Mathis*, 519 U.S. 433, 441-43 (1997). In this case, USSG §2X1.1, applicable to violations of 18 U.S.C. § 371, requires application of the base offense level for the substantive offense, which here is obstruction of justice in violation of 18 U.S.C. § 1503, USSG § 2J1.2. In 2003 the base offense level under § 2J1.2 was increased from 12 to 14, and additional upward adjustments were added. Therefore, to avoid *Ex Post Facto* problems, the parties agree that we must use the Sentencing Guidelines in effect at the time of the offense. The parties agree to the following Sentencing Guidelines calculations, which are based on the 2001 Sentencing Guidelines:

| | | | |
|---|---|---|---|
| 1. | Base Offense Level | | 12 |
| 2. | Enhancement for Substantial Interference under 2 J1.2(b)(2) | | +3 |
| 3. | Base fine level for an organization under §8C2.4 | | $125,000 |
| 4. | Culpability Score | | |
| | I. | Base (U.S.S.G. § 8C2.5(a)) | 5 |
| | ii. | Size of organization adjustment (§ 8C2.5(b)(5)) | +1 |
| | iii. | Cooperation and acceptance of responsibility (§ 8C2.5(g)(2)) | -2 |
| | iv. | Total Culpability Score: | 4 |
| | v. | Minimum and maximum multipliers (§ 8C2.6) | .8-1.6 |

  vi. Minimum and Maximum Fine Range       $100-200,000
    (§ 8C2.6)

## CONCLUSION

The proper functioning of the DOJ merger consent decree process relies in significant part on the full cooperation and truthfulness of the merging parties and their divestiture candidates when assessing their ability to remedy the harm posed by a merger. Anything short of that puts the process of investigation and approval of buyers of divestiture assets in jeopardy and risks reducing or thwarting the effectiveness of the relief ordered by the court. CMET has accepted responsibility for the conspiracy, whose object was to circumvent the consent decree process and has agreed to fully cooperate in the continuing investigation of the wrongdoing. Accordingly, the parties urge the Court to sentence the Defendant as provided in the plea agreement.

DATED: June 26, 2006

Respectfully submitted,

BY: _____  
Mark C. Schechter, Esq.  
Howrey LLP  
1299 Pennsylvania Avenue, N.W.  
Washington, D.C. 20004  
Tel: (202) 383-6890  
Fax: (202) 383-6610  

BY: _____  
John Schmoll  
Kenneth Gaul  
Chinita Sinkler  
Trial Attorneys  
U.S. Department of Justice  
Antitrust Division  
1401 H. Street, NW  
Suite 3700  
Washington, D.C. 20530  
Tel.: (202) 307-5780  
Fax: (202) 514-6525